IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF THE AUTOMOBILE MECHANICS' LOCAL NO. 701 UNION AND INUSTRY PENSION FUND, | ) ) ) ) ) | Case No. 14-cv-3531 |
| | ) | Judge Robert M. Dow, Jr. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| 6516 OGDEN AVENUE, LLC, an Illinois limited liability company, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Board of Trustees of the Automobile Mechanics' Local No. 701 Union and Industry Pension Fund ("Board") brought suit against Defendant 6516 Ogden Avenue, LLC ("Defendant") for withdrawal liability under the Employee Retirement Income Security Act ("ERISA"). Before the Court is the Board's motion for summary judgment [25], to which Defendant has failed to respond. For the reasons stated below, the Court grants the Board's motion [25]. Judgment will be entered in favor of the Board and against Defendant in the aggregate amount of $655,869.35.

**I.    Background**

The Court takes the relevant facts from the Board's Local Rule 56.1 Statement of Material Facts [27] and supporting exhibits [27-1] – [27-11]. Defendant did not respond to the Board's motion or Statement of Material Facts. Therefore, pursuant to Local Rule 56.1(b)(3)(C), the Board's fact statements are deemed admitted. N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless

controverted by the statement of the opposing party."). See also *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *De v. City of Chicago*, 912 F. Supp. 2d 709, 712-13 (N.D. Ill. 2012).

As of November 4, 2009, Robert L. Anderson, Jr. ("Anderson") was the sole member of Defendant. At that time, Anderson was also the 100% owner of Anderson Bros. Ford, Inc. ("Anderson Bros."). Anderson Bros. was a signatory to a collective bargaining agreement with the Automobile Mechanics' Local Union No. 701 ("Union"). The collective bargaining agreement required Anderson Bros. to contribute to the Automobile Mechanics' Local No. 701 Union and Industry Pension Fund ("Fund") on behalf of its employees working in covered employment.

Anderson Bros. stopped contributing to the Fund in November 2009. The Board determined that Anderson Bros. had withdrawn from the Fund during the plan year beginning January 1, 2009 and ending December 31, 2009, which exposed Anderson Bros. to withdrawal liability in the amount of $507,918. On or about January 26, 2010, the Board sent Anderson Bros. a notice and demand for payment in accordance with 29 U.S.C. § 1399. The Board informed Anderson Bros. that its first installment payment of $17,385 must be submitted by March 1, 2010.

Anderson Bros. did not make the first installment payment and did not request a review pursuant to 29 U.S.C. § 1399(c)(2) or arbitration pursuant to 29 U.S.C. § 1401. On March 9, 2010, the Board sent Anderson Bros. a notice of default, which stated that the Board would accelerate the remaining installment payments if payment was not received within 60 days. Anderson Bros. did not cure the default. On June 15, 2010, the Board filed suit against Anderson Bros. in this District (No. 10-cv-3704) to collect the outstanding withdrawal liability.

Judge Castillo entered default judgment in favor of the Board and against Anderson Bros. in the aggregate amount of $548,457.85.

The Board subsequently discovered that Anderson, who owned Anderson Bros., also owned 100% of Defendant. Defendant is an Illinois limited liability company with its principal place of business in Berwyn, Illinois. Defendant has leased properties to two entities since 2009. Defendant has a Federal Employer Identification Number and filed federal income tax returns in 2011, 2012 and 2013, reporting a loss in each year. Defendant claimed business deductions in 2011, 2012, and 2013 for cleaning and maintenance, insurance, legal and professional fees, taxes, depreciation of real estate, office expenses, and supplies. Anderson spends several hours a month working on behalf of Defendant collecting rent, paying bills, and keeping corporate filings.

On May 14, 2014, the Board filed suit against Defendant for withdrawal liability. The Board asserts that Defendant is responsible for Anderson Bros.' withdrawal liability under 29 U.S.C. § 1301(b)(1), because Defendant and Anderson Bros. were both trades or businesses under the common control of Anderson when Anderson Bros. ceased making payments to the Fund. The Board now moves for summary judgment [21]. The Board requests that the Court enter summary judgment in its favor and against Defendant for $548,457.85 in withdrawal liability. The Board also requests $50,791.80 in liquidated damages, $9,185.37 to cover its attorneys' fees, and $87,974.18 in interest. Defendant did not file a response to the Board's motion.[1]

**II. Legal Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] Pursuant to the Agreed Order entered February 25, 2015 [24], Defendant's response was due April 17, 2015.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir.2011) (quoting *Celotex Corp.,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III.    Analysis**

ERISA, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), requires an employer to make contributions to a multiemployer pension plan "in accordance with the terms and conditions of such plan." 29 U.S.C. § 1145. "[A]n employer who ceases to contribute to a multi-employer pension fund is liable for withdrawal liability." *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 738 F. Supp. 2d 840, 845 (N.D. Ill. 2010). See also 29 U.S.C. § 1381 ("[T]he employer is liable to the plan in the amount determined * * * to be

4

the withdrawal liability."); *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 876 (7th Cir. 2011).

A plan must complete several procedural steps to assess withdrawal liability on a withdrawing employee. The plan must notify the employer of "the amount of liability" and "the schedule for liability payments" and must "demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1)(A). If the employer does not make payment, the plan "may require immediate payment of the outstanding amount of [its] withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id*. § 1399(c)(5). A "plan fiduciary, employer, plan participant, or beneficiary" is authorized to file a civil action against the employer to "compel an employer to pay withdrawal liability." *Id.* § 1451(a)(1), (b).

It is undisputed that Anderson Bros. withdrew from the Fund during the plan year beginning January 1, 2009 and ending December 31, 2009 and, as a result, incurred withdrawal liability under ERISA. It is also undisputed that the Board complied with the procedural requirements for assessing withdrawal liability on Anderson Bros. Judge Castillo already entered final judgment in favor of the Board and against Anderson Bros. in the amount of $548,457.85.

The primary issue for this Court to decide is whether Defendant may be held liable for Anderson Bros.' withdrawal from the Fund, as well. Under ERISA, as amended by the MPPAA, "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301. "Each trade or business under common control is jointly and severally liable for any withdrawal liability of any other." *Central States*, 668 F.3d at 876.

"This prevents employers from 'fractionalizing' their assets among several entities to avoid liability." *Cent. States, Se. & Sw. Areas Pension Fund v. Neiman*, 285 F.3d 587, 589 (7th Cir. 2002). "Thus, in order to impose withdrawal liability on an organization other than the one obligated to the fund, two conditions must be satisfied: (1) the organization must be under common control with the obligated corporation; and (2) it must be a trade or business." *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 894-95 (7th Cir. 2001).

The Court concludes that these two conditions have been satisfied. Defendant and Anderson Bros. were under the common control of Anderson at the time Anderson Bros. incurred withdrawal liability. "The MPPAA draws its definition of 'common control' from the regulations promulgated under § 414(c) of the Internal Revenue Code." *Central States*, 668 F.3d at 880 (citing 29 U.S.C. § 1301(b)(1)). "The Internal Revenue regulations set out three ways a group of trades or businesses can be commonly controlled—a parent-subsidiary group, a brother-sister group, or a 'combined' group consisting of both parent-subsidiary and brother-sister relationships." *Id.* (citing 26 C.F.R. § 1.414(c)-2(a)).

The "brother-sister" group is relevant here. "The term 'brother-sister group of trades or businesses under common control' means two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own * * * a *controlling interest* in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in *effective control* of each organization." 37 C.F.R. § 1.414(c)-2(c) (emphasis added). In the case of a corporation, "controlling interest" means "ownership of stock possessing at least 80 percent of total combining voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stocks

of such corporation," *id.* § 1.414(c)-2(b)(2)(A), and "effective control" means the ownership of "stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of such corporation," *id*. § 1.414(c)-2(c)(2)(i). In the case of a sole proprietorship, "controlling interest" means "ownership of such sole proprietorship," *id.* § 1.414(c)-2(b)(2)(D), and the term "effective control" means the ownership of "stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of such corporation," *id.* § 1.414(c)-2(c)(2)(iv).

It is undisputed that, as of the date of Anderson Bros.' withdrawal from the fund, Anderson Bros. (an Illinois corporation) was 100% owned by Anderson. Anderson therefore had a "controlling interest" in Anderson Bros. 29 U.S.C. § 1.414(c)-2(b)(2)(A). At the same time, Defendant (an Illinois limited liability company) was also solely owned by Anderson. Section 1.414(c)-2 of the Treasury Regulations does not address specifically the treatment of limited liability corporations, and the Board does not address this issue in its brief. According to the Internal Revenue Service ("IRS"), "an LLC with only one member is treated as an entity disregarded as separate from its owner for income tax purposes * * *, unless it files Form 8832 and affirmatively elects to be treated as a corporation." IRS, Single Member Limited Liability Companies, https://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Single-Member-Limited-Liability-Companies (last visited Mar. 16, 2016). This indicates that Defendant should be considered either a sole proprietorship or a corporation under section 1.414(c)-2, which is part of the Code of Federal Regulations governing income taxes. The Court need not decide which because Anderson solely owned Defendant and therefore had a controlling interest in Defendant under either applicable test. See § 1.414(c)-2(b)(2)(A), (D).

7

Anderson also had "effective control" over both Anderson Bros. and Defendant when Anderson Bros. withdrew from the Fund because he alone owned both entities. See *id.* § 1.414(c)-2(c)(2)(i), (iv). See also *Central States*, 668 F.3d at 879-81 (solvent affiliates and withdrawing employer were under common control for ERISA purposes at the time withdrawing employer incurred withdrawal liability to pension fund where, like withdrawing employer, affiliates would then have been property of, and thus subject to common control of, businessman's bankruptcy estate, had he not fraudulently conveyed his controlling interests in affiliates to foreign trusts).

Having determined that Defendant and Anderson Bros. were under common control when Defendant withdrew from the Fund, we now consider whether Defendant is engaged in a "trade or business." For an activity to be a trade or business under the *Groetzinger* test, "a person must engage in the activity: (1) for the primary purpose of income or profit; and (2) with continuity and regularity." *Central States*, 238 F.3d at 895 (citing *C.I.R. v. Groetzinger*, 480 U.S. 23, 35 (1987)). One purpose of this test is "to distinguish trades or business from investments, which are not trades or business and thus cannot form a basis for imputing withdrawal liability under § 1301(b)(1)." *Id*. "Actions of a person, such as negotiating leases, researching properties, maintaining or repairing properties, etc., are business or trade conduct and thus are appropriately considered" in determining whether the continuity/regularity prong of the test is satisfied. *Id*. But "mere ownership of a property (as opposed to activities taken with regard to the property) cannot be considered in determining whether conduct is regular or continuous, because "possession of a property, * * * without more is the hallmark of an investment," rather than a trade or business. *Id*.

The Seventh Circuit has recognized "that formally recognized business organizations pose 'no interpretative difficulties' for the *Groetzinger* test." *Cent. States, Se. & Sw. Areas*

*Pension Fund v. CLP Venture LLC*, 760 F.3d 745, 749 (7th Cir. 2014). "[B]ecause formal business organizations ordinarily operate with continuity and regularity and are ordinarily formed for the primary purpose of income or profit, it seems highly unlikely that a formal for-profit business organization would not qualify as a 'trade or business.'" *Id.* at 749-50.

In this case, Defendant is a formally recognized business organization, an LLC. This points to Defendant being a "trade or business." In addition, the undisputed evidence shows that Defendant has leased properties to two entities from 2009 to the present, collects rent, and has claimed business deductions in 2011, 2012, and 2013 for cleaning and maintenance, insurance, legal and professional fees, taxes, depreciation of real estate, office expenses, and supplies. Anderson also spends several hours a month working on behalf of Defendant collecting rent, paying bills, and keeping corporate filings. The Court concludes based on this evidence that Defendant is engaged in leasing property continuously and regularly for the primary purpose of income or profit and therefore is engaged in a trade or business under the *Groetzinger* test. Cf. *Central States*, 668 F.3d at 878 ("creating a formal business entity, having employees, and claiming business exemptions and deductions also point to a 'trade or business'"). Having determined that Defendant and Anderson Bros. were under common control when Anderson Bros. withdrew from the Fund and that Defendant is a trade or business, the Court concludes that Defendant is jointly and severally liable for Anderson Bros.' withdrawal liability in the amount of $548,457.85. *Central States*, 238 F.3d at 894-95.

The Board is also entitled to interest on Anderson Bros.' unpaid withdrawal liability in the amount of $87,974.18. See 29 U.S.C. § 1132(g)(2)(B) (requiring award of "interest on the unpaid contributions" to successful plaintiff in action brought to enforce § 1145). This amount is calculated using the rate reported by the Board of Governors of the Federal Reserve System in

Statistical Release H.15, which has been 3.25% since 2009. See 29 U.S.C. § 1399(c)(3) ("If a payment is not made when due, interest on the payment shall accrue from the due date until the date on which the payment is made."); 29 C.F.R. § 4219.329(b) ("Except as otherwise provided in rules adopted by the plan pursuant to § 4219.33, interest under this section shall be charged or credited for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day (or next business day if the fifteenth day is not a business day) of the month preceding the beginning of each calendar quarter, as reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15[.]"). See also [27] at 4, [27-9].

The Board is further entitled to liquidated damages in the amount of $50,791.80. See 29 U.S.C. § 1132(g)(2)(C) ("the court shall award the plan * * * an amount equal to the greater of * * * (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent * * *"). This amount is equivalent to 10% of the unpaid withdrawal liability and calculated pursuant to the Pension Fund Trust Agreement, which provides for liquidated damages of at least 10% of the monies due.

Finally, the Board is entitled to its reasonable attorneys' fees and costs in the amount of $12,628.75. See 29 U.S.C. § 1132(g)(2)(D) ("the court shall award the plan * * * reasonable attorney's fees and costs of the action, to be paid by the defendant"). The award of reasonable attorneys' fees is a "mandatory add-on[] in (successful) suits to enforce section 1145." *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992). See also *Cent. States, Se. & Sw. Areas Pension Fund v. Murphy Bros., Inc.*, 772 F. Supp. 2d 918, 922 (N.D. Ill. 2011) (requiring employer to pay fund's attorneys' fees and costs where employer failed to make required payments to the fund and fund was required to bring suit to collect

payments). "'The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). Here, the Board has submitted a sworn affidavit from a member of its outside law firm and detailed billing records showing that it incurred $9,185.37 in attorneys' fees and court costs pursuing payment from Defendant. See [27-11]. The billing records show that the Board's outside law firm devoted 35.74 hours at the average rate of $257.00 per hour to the litigation to recover over $600,000 in unpaid ERISA liability. Defendant has not raised any objections to the bills. The Court has reviewed the bills and concludes that they are reasonable in light of the number of hours worked, the usual and customary rates charged by other law firms doing similar work in the Northern District of Illinois, and the recovery obtained. Cf. *Trustees of the Chicago Reg'l Council of Carpenters Pension Fund v. Rock-It Interiors, Inc.*, 2015 WL 9315541, at *3 (N.D. Ill. Dec. 23, 2015) (awarding $12,628.75 in attorneys' fees (68 attorney hours at $175 to $225 per hour) where unpaid ERISA liability totaled $27,978.68); *Carpenters Fringe Benefit Funds of Illinois v. McGreal Constr. Co.*, 2013 WL 5548893, at *4 (N.D. Ill. Oct. 8, 2013) (awarding $17,087.50 in attorneys' fees (83 attorney hours at an average of $205 per hour) where unpaid ERISA liability totaled $53,782.79). Therefore, the Board is entitled to an award of $12,628.75 to compensate it for its attorneys' fees and court costs.

**IV.	Conclusion**

For the reasons stated above, the Court grants the Board's motion [25].  Judgment will be entered in favor of the Board and against Defendant in the aggregate amount of $655,869.35.


Dated: March 16, 2016

_____
Robert M. Dow, Jr.
United States District Judge